CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

July 25, 2024
LAURA A. AUSTIN, CLERK
BY:
/s/T. Taylor
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **TYRELL LAMONT JOHNSON**, | ) | |
| Plaintiff, | ) | Case No. 7:23cv00229 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **OFFICER L. CHAFFIN, et al.,** | ) | By:  Pamela Meade Sargent |
| Defendants. | ) | United States Magistrate Judge |

Tyrell Lamont Johnson, ("Johnson"), a Virginia Department of Corrections, ("VDOC"), inmate proceeding pro se, filed a complaint under 42 U.S.C. § 1983, alleging violation of his Eighth and Fourteenth Amendment rights by the defendants. The defendants have filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Docket Item No. 19) ("Motion"), to which plaintiff has responded.  Following notice pursuant to 28 U.S.C. § 636(c), all parties filed written consent to the exercise of jurisdiction in this case by a magistrate judge.  Thereafter, pursuant to Order entered on August 29, 2023, (Docket Item No. 12), the case was transferred to the undersigned magistrate judge to handle the proceedings herein, including dispositive orders, pursuant to 28 U.S.C. § 636(c)(1).  Upon review of the pleadings, the court will grant the Motion.

## I.  Background

In his Complaint, (Docket Item No. 1), Johnson alleged on February 28, 2022, while incarcerated at Wallens Ridge State Prison, ("Wallens Ridge"), he was written a false disciplinary offense 105A/198D charge for threatening to commit/aggravated assault upon a nonoffender, WRSP-2022-0453, and a 229 charge for being in an

unauthorized area by Correctional Officer L. Chaffin, ("Chaffin"). Johnson alleged that he was in the A-1 building dayroom on the phone when Chaffin cut off the phones. While walking to his cell, Johnson admits that he told Chaffin "he was real f***in[g] disrespectful." (Complaint at 5.) According to Johnson, Chaffin told him to "pack my shit."  (Complaint at 5.) Johnson alleged that he went to his cell, and Unit Manager Stallard and Sgt. Miller came and asked him what happened. Johnson said that he explained what had happened, and Stallard and Miller told him to stay in his cell. Johnson alleged that, about an hour later, a correctional officer brought him the 105A and 229 charges.

Johnson alleged that he was transferred to River North Correctional Center, ("River North"), on March 1, 2022, where his disciplinary offense hearing on the two charges was conducted on March 9, 2022. After viewing video evidence, Johnson alleges, Institutional Hearing Officer, ("IHO"), Franks dismissed the 229 charge against him and amended his 105A charge to a 100 charge for threatening to kill Chaffin. The decision dismissing the 229 charge is attached to Johnson's Complaint as Exhibit 9. (Docket Item No. 1-9.) The Disciplinary Offense Report of this amended charge, WRSP-2022-0453, is attached to Johnson's Complaint as Exhibit 1. (Docket Item No. 1-1.) On this Disciplinary Offense Report, Chaffin wrote: "On the above date and time I[,] Officer Chaffin[,] was in A-1 control when Inmate T. Johnson … pointed at me and said (I'm Going to kill your Ass) therefore this charge is being written …." (Docket Item No. 1-1 at 1.) The 100 charge was heard on March 18, 2022, and, Johnson alleges, he was found guilty of that charge. Johnson appealed his conviction to Level 1 review before the Unit Head, Wallens Ridge Warden Melvin Davis. Davis upheld Johnson's conviction on April 1, 2022. Davis's decision on appeal is attached to Johnson's Complaint as Exhibit 2. (Docket Item No. 1-2.) Johnson appealed this decision to Level 2 on April 20, 2022. This

Disciplinary Appeal form is attached to Johnson's Complaint as Exhibit 3. (Docket Item No. 1-3.) The Regional Administrator, Carl Manis, upheld the Unit Head's decision on June 20, 2022. It does not appear that Manis's decision is attached to Johnson's Complaint. Johnson's Complaint and the attached exhibits do not contain any information about the penalty imposed for the disciplinary offense conviction. They also do not list any consequences, other than his Complaint states that he is "back at a Super Max Prison." (Complaint at 13.)

Johnson claimed that he spoke to Manis in August 2022, and Manis told him to write him detailing any alleged procedural errors in his disciplinary conviction. Johnson said that Manis told him he would review his case. Johnson wrote Manis, and, when Johnson had not received a response from Manis by September 2022, Johnson asked his counselor, Sheets, to see if the 100 charge was still on his record. Sheets told Johnson there was no 100 charge on his record, but there was a conviction for 105A. Johnson immediately wrote to Karen Stapleton, head of the VDOC Discipline Unit, advising her that a 105A charge was on his record for which he had never had a disciplinary hearing and asking that the charge be removed from his record. Johnson received a response from Zach Davis in the Inmate Discipline Unit stating that Johnson's 105A conviction had been upheld on appeal by Manis, and there was no further appeal of the conviction available. This response is attached to Johnson's Complaint as Exhibit 4. (Docket Item No. 1-4.)

Johnson alleges that, a week later, he was called into the hallway by IHO Stanley, who passed on a threatening message from Stapleton to leave the issue alone or she would have Franks hear the 100 charge and find him guilty of it just so it could be put in the VACORIS system.

Johnson alleges that he was later told to write J. Hughes, also with the Inmate Discipline Unit, about the situation, which he did. Johnson's letter to Hughes is attached to Johnson's Complaint at Exhibit 5. (Docket Item No. 1-5.) Around February 4, 2023, Johnson alleges he was called into the Unit Manager's office where Hughes and Stapleton were on the telephone and asked him what he wanted done. Johnson said he told them about the procedural errors and that Chaffin lied in placing the original charge against him. He said he told them that Manis said he would look into it. Johnson said that Hughes and Stapleton told him that they would check into it and dismiss the charge if Manis had said that. On February 13, 2023, Johnson received a letter from Hughes, stating that Manis could not recall telling Johnson he would look into the matter and telling Johnson it was best for Johnson to leave the administrative mistake alone if he knew what was best for him. This letter from Hughes is attached to Johnson's Complaint as Exhibit 6. (Docket Item No. 1-6.) Johnson said he wrote Hughes again, stating that his main complaint was that Chaffin lied in placing the charge against him. This letter is attached to Johnson's Complaint as Exhibit 7. (Docket Item No. 1-7.) On March 23, 2023, Johnson received another letter from Hughes, telling him that the current outcome benefitted him and stating that "they" would not respond any more. This letter from Hughes is attached to Johnson's Complaint as Exhibit 8. (Docket Item No. 1-8.)

Johnson alleges that IHO Franks violated his due process rights by his biased and unprofessional action in convicting him of the 100 charge based on the false testimony of Chaffin and by failing to review requested video evidence. Johnson further alleges that Franks violated his due process rights by improperly placing a conviction for a 105A charge on his CORIS record when he never had a disciplinary hearing on a 105A charge. Johnson alleges that Chaffin also violated his due process rights by falsely testifying that he was able to hear Johnson threaten to kill him

because Johnson was the only inmate out in the pod and it was quiet. Johnson further alleges that Warden Davis violated his due process rights by upholding his 100 charge disciplinary conviction and not correcting the erroneous 105A charge. Johnson alleges that Davis's actions also violated his Eighth Amendment right to be free from cruel and unusual punishment because it resulted in him being transferred to a super max prison. Johnson alleges that Hughes violated his due process rights when she failed to correct the erroneous 105A charge. He further alleges that Stapleton violated his rights under the Fourteenth and Eighth Amendments, in that she threatened Johnson that she would have Franks rehear Johnson's charge and convict him of the more serious 100 offense if he continued to insist that the 105A charge be dismissed from his record. Johnson's Complaint does not state how he alleges Manis's actions violated his constitutional rights.

At the time of the filing of his Complaint, Johnson alleged that he had been returned to Wallens Ridge, which was confirmed by the address provided to the court. Johnson alleges that his return to Wallens Ridge, which he alleges is a "super max prison," has resulted in limited contact and communication with his family and has affected "his chance to do his clemency."

## II.    Discussion

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of a complaint, considering the facts alleged to be true. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). The facts alleged must be sufficient for the court to infer that the defendant is liable if those facts are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The motion should be granted only if the plaintiff is not entitled to judgment on the facts alleged. The motion does not resolve factual

disputes between the parties.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Pro se complaints must be liberally construed and held to a less stringent standard than those drafted by an attorney.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "A *pro se* plaintiff still must allege facts that state a cause of action." *Bracey v. Buchanan,* 55 F. Supp. 2d 416, 421 (E.D. Va. 1999). However, legal conclusions, labels and conclusory statements are not facts and will not save a claim that is not supported by facts.  *See Ashcroft*, 556 U.S. at 678–79.

Section 1983 provides a procedure for vindicating federal rights that have been conferred on individuals.  *See Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000).  To state a cause of action under § 1983, plaintiff must allege facts showing that a person, acting under color of state law, violated his rights under the Constitution or laws of the United States.  *See* 42 U.S.C. § 1983.  Liability under § 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).  The doctrine of respondeat superior is inapplicable to § 1983 claims. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977).  Each recognized cause of action has its own elements of pleading and proof, which must be satisfied.  Further, liability under § 1983 must be analyzed individually for each defendant.  *See King v. Riley,* 76 F.4th 259, 269 (4th Cir. 2023). Also, violation of prison policy, in and of itself, is not a federal constitutional violation and is not actionable under § 1983. *See Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990).

To state a claim for supervisory liability under § 1983, a plaintiff must allege:

…(1) [T]hat the  supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and

6

unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. …

To satisfy the requirements of the first element, a plaintiff must show the following: (1) the supervisor's knowledge of (2) conduct engaged in by a subordinate (3) where the conduct poses a pervasive and unreasonable risk of constitutional injury to the plaintiff. … Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. …

A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses."

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal citations omitted).

The Fourteenth Amendment prohibits a state from depriving an individual of life, liberty or property without due process of law. *See* U.S. Const. amend. XIV. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015). The first step in any procedural due process claim, then, is to determine whether the plaintiff has been deprived of a protected liberty or property interest. *See Robinson v. Creasey,* No. 5:07-cv-00347, 2009 WL 1073642, at *3 (S.D. W. Va. Apr. 21, 2009) (citation omitted). Only if the plaintiff has been deprived of a protected interest does the court get to the second step, determining if the procedures provided the appropriate due process protection. *See Robinson,* 2009 WL 1073642, at *3.

In determining whether a protected interest exists, the court examines the nature of the interest.  For prisoners serving a custodial sentence, the interest is "in the nature of a liberty interest" if its deprivation (1) "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or (2) inevitably affects the duration of the inmate's sentence.  *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  Many, if not most, penalties imposed following prison disciplinary hearings do not affect a protected liberty interest, because they do not automatically and inevitably increase the length of the inmate's sentence (in contrast to a new criminal conviction, which would increase a sentence), and they do not impose significant hardship over and above those already contemplated by the original sentence to prison.  *See, e.g., Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (noting that prisoners have no liberty interest in privileges, such as telephone or canteen access); *Slezak v. Evatt*, 21 F.3d 590, 594 (4th Cir. 1994) (finding no constitutional liberty interest in an inmate's security classification); *Sandin*, 515 U.S. at 486 (holding that inmates have no liberty interest in avoiding disciplinary segregation); *Robinson*, 2009 WL 1073642, at *12 (finding inmate has no liberty interest in maintaining his prison employment). Also, "due process does not require the opportunity to appeal prison disciplinary decisions." *Crawley v. Kanode*, 2022 WL 963978, at *13 (W.D. Va. Mar. 30, 2022) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974)).

Here, Johnson's Complaint does not state any viable claim for violation of his due process rights based on his charge and conviction on Disciplinary Offense WRSP-2022-0453, in that it does not allege that he suffered any deprivation of a protected liberty or property interest. In fact, Johnson's Complaint and its attachments do not state that he suffered any penalty for this disciplinary offense

conviction.[1] Johnson's Complaint does allege that this conviction "put him back at a Super Max Prison where he's been limited to contact and communication with his family." When a penalty for a disciplinary infraction does not affect the length of an inmate's sentence, his constitutionally protected liberty interests are limited to freedom from restraint that imposes atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484. While both the U.S. Supreme Court and the Fourth Circuit Court of Appeals have recognized that inmates may have a constitutionally protected liberty interest in avoiding assignment to a "Supermax" prison, *see Wilkinson v. Austin*, 545 U.S. 209, 223-24 (2005*); Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023), this right is based on the atypical and significant hardship imposed by the particular institutions. In *Wilkinson*, the Court found that inmates had a protected liberty interest in avoiding assignment to a particular state "supermax" prison where inmates were "deprived of almost any environmental or sensory stimuli and of almost all human contact" even to the point that conversation was not permitted from cell to cell for "an indefinite period of time" and lost their eligibility for parole while incarcerated at the facility. 545 U.S. at 214-15, 222-24. In *Incumaa v. Stirling*, the Fourth Circuit held that "the severely restrictive and socially isolating environment" of an inmate's indefinite incarceration in a Special Management Unit at a South Carolina prison, combined with "near-daily cavity and strip searches," "confinement to a small cell for all sleeping and waking

---

[1] The defendants, in their memorandum supporting the Motion, state that Johnson was penalized by a 90-day loss of telephone privileges. The defendants also attached a copy of the complete Disciplinary Offense Report for WRSP-2022-0453, confirming that the penalty imposed was a 90-day loss of telephone privileges. (Docket Item No. 20-1.) To consider this document, the court would necessarily convert the defendants' Motion into a motion for summary judgment. *See* FED. R. CIV. P. Rule 12(d). Therefore, the court has not considered this evidence in its ruling, but notes that, if the court considered this evidence, Johnson still would not have a viable claim for a violation of his due process based on Disciplinary Offense WRSP-2022-0453 because an inmate does not possess a federally protected liberty interest in telephone privileges. *See Moone v. Woodson*, 2021 WL 5049770, at *2 (W.D. Va. Nov. 1, 2021).

hours, aside from ten hours of activity outside the cell per month" and "the denial of educational, vocational, and therapy programs" presented the type of atypical and significant hardship that implicates a protected liberty interest. 791 F.3d 517, 531-32 (4th Cir. 2015).

Johnson's complaint alleges no facts that could establish an atypical and significant hardship by his return to Wallens Ridge. "The atypical hardship requirement is difficult to satisfy. Mere limitations on privileges, property, and activities for administratively segregated inmates, and even disciplinary action 'in response to … misconduct fall[] within the expected perimeters of the sentence imposed by a court of law.'" *DePaola v. Va. Dep't of Corrs*., 2016 WL 5415903, at * 7 (W.D. Va. Sept. 28, 2016) (quoting *Sandin*, 515 U.S. at 485); *see also Gaston*, 946 F.2d at 343 (holding that "changes in a prisoner['s] location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges – matters which every prisoner can anticipate are contemplated by his original sentence to prison – are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently" and do not implicate due process). In *Sandin*, the Supreme Court held that temporary assignment to segregated confinement for 30 days or even six months, with reduced privileges, few out-of-cell activities or socialization opportunities and heightened security measures,, did not amount to atypical or significant hardship. *See Sandin*, 515 U.S. at 485-86. *In Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997), the Fourth Circuit found that exposure for six months to conditions of administrative segregation, including unbearably hot cells infested with vermin, smeared with human feces and urine and flooded with water from leaking toilets, cold food in considerably smaller portions than given to general population inmates, no outside

recreation, only being permitted to leave the cell three or four times a week and no educational or religious services, was not an atypical, significant hardship and did not implicate a liberty interest. Here, Johnson has alleged only that his transfer to Wallens Ridge has limited his contact and communications with his family. Even if accepted as true, these facts do not rise to the level of an atypical and significant hardship.

Insofar as Johnson claims that his transfer to Wallens Ridge affected his ability to seek clemency, prisoners have no constitutional right to clemency. *See Coder v. O'Brien*, 719 F. Supp. 2d 655, 661 (W.D. Va. 2010). Therefore, there is no protected liberty interest in obtaining clemency. *See Coder*, 719 F. Supp. 2d at 661-62.

In addition to failing to allege facts establishing a protected liberty interest, Johnson's Complaint does not state a due process claim against any defendant based on a failure to overturn his disciplinary offense conviction on appeal. *See Crawley*, 2022 WL 963978, at *13. Nor does his Complaint state a claim for supervisory liability against any defendant, in that there is no allegation of any widespread conduct or even conduct on several different occasions that posed an unreasonable risk of constitutional injury. *See Shaw*, 13 F.3d at 799.

Similarly, Johnson's allegations do not adequately allege a claim for violation of the Eighth Amendment right to be free from cruel and unusual punishment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment on one convicted of a crime. U.S. CONST. amend. VIII. The Eighth Amendment not only protects against the punishments imposed by the courts, but it also provides protection with respect to the treatment a prisoner receives in prison and the conditions under which he is confined. *See Shakka v. Smith*, 71 F.3d 162, 165 (4th

Cir. 1995). To state a claim that prison conditions violate the Eighth Amendment, a plaintiff must allege both "'(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)). For prison conditions to rise to the level of a serious deprivation of a basic human need, "there must be evidence of a serious medical and emotional deterioration attributable to" the challenged condition. *Lopez v. Robinson*, 914 F.2d 486, 490 (4th Cir. 1990) (quoting *Shrader v. White*, 61 F.2d 975, 979 (4th Cir. 1985)). *See also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding extreme deprivations are required to state an Eighth Amendment claim based on conditions of confinement). "Verbal abuse of inmates by prison officials, without more, does not rise to the level of an Eighth Amendment violation." *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 691 (E.D. Va. 2010); *see also Morva v. Johnson*, 2011 WL 3420650, at *7 (W.D. Va. Aug. 4, 2011) (collecting authority for the proposition that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety," do not give rise to an Eighth Amendment violation).

Insofar as Johnson alleges that Stapleton violated his constitutional rights in that she threatened him, this is not sufficient to state a claim for relief under the Eighth Amendment. Johnson's allegations that Davis violated his Eighth Amendment rights by upholding his disciplinary offense conviction also are insufficient to state a claim for relief. Johnson alleges that Davis's action resulted in him being returned to Wallens Ridge, which limited his contact and communications with his family. Johnson has not alleged that he has suffered any serious or significant physical or emotional injury. Based on the above, Johnson's allegations are not sufficient to state a claim for violation of his right to be free from cruel and unusual punishment.

### III. Conclusion

For the reasons stated above, the Motion will be granted, and Johnson's claims against the defendants will be dismissed for failure to state a claim.

An appropriate order will be entered.

**ENTERED:**  July 25, 2024.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE